Argued and submitted January 30, affirmed August 10, reconsideration denied October 2, petition for review denied November 3, 1981 (291 Or 893)

## CITY OF PORTLAND,
*Respondent,*
*v.*
## CHICHARRO,
*Appellant.*

### (No. DA 191180-8004, CA 18497)

632 P2d 489

Richard L. Lonergan, Portland, argued the cause for appellant. With him on the brief were Howard R. Lonergan and Clint A. Lonergan, Portland.

Rudolph S. Westerband, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

## WARDEN, J.

Defendant appeals his conviction for disobeying a police officer at an assembly, arguing that the ordinance under which he was charged, Section 14.24.100 of the Code of the City of Portland, is unconstitutional because of vagueness, overbreadth and failure to prescribe a culpable mental state, and because it makes the exercise of the constitutionally guaranteed right to assemble a crime based on the act of another.

The police were dispatched to a party at a Portland residence. Upon arriving, they contacted two persons who claimed to be the son and daughter of the owners of the house and who said they had organized the party. Both requested that the police order everyone to leave. The daughter claimed that persons had kicked holes in the front door and broken a porch railing. Police observed holes in the door and the broken railing.

In a period of 45 minutes, defendant was told three times by police officers to leave the area where the party was in progress and was arrested the third time for refusing to depart. He was not arrested in the house where the party was centered, but was outside the house among a group of approximately 45 people who were also attending the party. The party had spilled out onto the area surrounding the house. There were between 100 and 200 people in attendance. The street was lined with cars, some illegally parked. The party, which included live music and beer, was described by police officers as loud and rowdy.

After the police arrived, the headlight of a police car was "kicked in" and a thrown beer bottle struck a police car. One individual picked up a rock, which, it appeared to police, he was intending to throw. No witness testified that defendant committed any acts of violence or vandalism.

Defendant was charged with knowingly disobeying an order of a police officer to disperse. Section 14.24.100 provides:

"(a)   At an assembly of three or more persons, when there is reasonable cause to believe that a disturbance of the peace or a danger to public safety is imminent if the

assembly continues, a peace officer may order persons present at the assembly to abandon any weapons or to disperse, if he finds that two or more persons present:

"(1)   Are threatening bodily harm to another or damage to property, with immediate power to carry out that threat, or

"(2)   Have committed an unlawful act of violence during the course of the assembly.

"(b)   It is unlawful for any person present at the scene of an assembly of three or more persons to disobey an order of a peace officer authorized by this section."

Defendant contends that the phrase "disturbance of the peace" violates the due process clause of the Fourteenth Amendment of the United States Constitution, as well as Article I, section 10, of the Oregon Constitution.

■         Defendant's first contention is that the ordinance fails for vagueness. The phrase "disturbance of the peace" and its synonym "breach of the peace" have been found to be constitutionally infirm due to vagueness. In *Edwards v. South Carolina,* 372 US 229, 234, 83 S Ct 680, 9 L Ed 2d 697 (1963), the United States Supreme Court stated that the phrase "breach of the peace" was not susceptible to exact definition. The Supreme Court has also stated that "to make an offense of conduct which is 'calculated to create disturbances of the peace' leaves wide open the standard of responsibility." *Ashton v. Kentucky,* 384 US 195, 200, 86 S Ct 1407, 16 L Ed 2d 469 (1966). The phrase "disturbance of the peace" is impossible to define with exactitude. However, unlike the statutes discussed in *Edwards* and *Ashton,* the ordinance at hand further defines and limits what otherwise would be an amorphous crime. "Disturbance of the peace" is limited to disturbances where there is (1) both a threat of bodily harm or damage to property and the immediate power to carry out the threat or (2) an actual unlawful act of violence. We conclude that this added language clarifies the ordinance so that it can withstand defendant's constitutional attack for vagueness. It defines the conditions constituting a disturbance of the peace which must be found to exist before disobeying an officer's order to disperse becomes unlawful. Thus, it does give notice to the defendant of the sort of behavior which is

prohibited, and it further provides a standard for adjudication.[1]

■    In defendant's contention that the statute is void due to overbreadth, he includes his claim that the ordinance is invalid because "an unrelated unlawful act of another can create a crime out of the exercise of a constitutional right (the right to assemble) even though the person ordered to disperse has only engaged in lawful innocent acts." We conclude that both abstractly and on the facts on which defendant was convicted, defendant's constitutional right to assemble was not violated.

The U.S. Constitution and the Oregon Constitution give the defendant a right peaceably to assemble. US Const, Amend I; Or Const. Art I, § 26. The ordinance at hand, however, is aimed at preventing, with adequate specificity, assemblies which are violent or are likely imminently to become violent. It is true that the U.S. Supreme Court has protected individuals' rights to assemble when the acts of violence are threatened by third persons. Defendant cites *Cox v. Louisiana,* 379 US 536, 85 S Ct 453, 13 L Ed 2d 471 (1965), and *Ashton.* But it was defendant's right to free speech in *Cox* and the defendant's right to free press in *Ashton* which were protected in the face of hostility by others. Defendant's right to assemble at a party at which there was a threat of bodily harm or property damage, capable of immediately being carried out, and where there was the commission of an unlawful and violent act, is not equivalent to the rights involved in *Ashton* and *Cox.* Even if the right of free speech had been involved (and it was not in this case), as the U.S. Supreme Court has pointed out in *Feiner v. People of State of New York,* 340 US 315, 320, 71 S Ct 303, 95 L Ed 295, (1951), citing *Cantwell v. State of Connecticut,* 310 US 296, 308, 60 S Ct 900, 84 L Ed 1213 (1940),

"When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the state to prevent or punish is obvious."

---

[1] *Compare, City of Portland v. Anderson,* 40 Or App 779, 596 P2d 603, *rev den* (1979), where the phrase "interference with a police officer" was found to be too vague to be salvaged by judicial interpretation because the phrase failed to give notice as it does not have an "ordinary and unmistakable meaning" and failed to provide standards for adjudication.

The community's interest in peace and order on its streets must prevail when, as here, defendant is part of a group, some of whom are engaged in violent acts. It is not the violent acts of others that defendant is charged with, but, instead, it is his own act of knowingly disobeying the order of a peace officer.

■ ■ Defendant lastly contends that the ordinance, as promulgated, is invalid, because it does not include a culpable mental state. It is not essential to the constitutionality of an ordinance that it do so. It is sufficient if the charging instrument allege a culpable mental state. *See State v. Huie,* 52 Or App 975, 630 P2d 382 (1981). Here, defendant was accused of and tried for *knowingly* violating this ordinance. The state concedes that a culpable mental state is an element of the offense. ORS 161.115(2). The City was required to prove that defendant "knew" that someone had "committed an unlawful act of violence during the course of the assembly" before he could be found guilty. Under this construction, the ordinance as applied in this case is constitutional. The jury was instructed that the ordinance proscribed knowingly refusing to obey a police officer's instruction and the definition of knowingly was included. Although the instruction may have been inadequate for failing to advise the jury that defendant must have a culpable mental state as to each element of the crime, defendant did not except to the jury instructions on that ground. The error, if any, was not properly preserved.

Affirmed.